UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANGELA D. HOPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-121-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 13 & 13-1] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 16 & 17]. Angela D. Hope ("Plaintiff") seeks judicial review of the decision of

the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On December 5, 2013, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on May 15, 2013. [Tr. 11, 258–69]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 186–88]. A hearing was held on February 22, 2017. [Tr. 48–100]. On May 3, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 11–22]. The Appeals Council denied Plaintiff's request for review on February 3, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 22, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.
>
> 2.  The claimant has not engaged in substantial gainful activity since May 15, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: aortic valve defects, status-post replacement, chronic obstructive pulmonary disease (COPD), thyroid enlargement, lung granulomas, lumbar disc bulging, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid concentrated exposure to

extreme cold and extreme heat with no concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, poorly ventilated areas, and chemical fumes. She could perform simple, routine, repetitive tasks performed in a work environment free of fast-paced work, involving only simple work-related decisions and few if any workplace changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on December 1, 1972, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13–22].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.     DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ improperly found that she did not meet Listings 4.02, 4.04, 4.05, and 4.06. [Doc. 13-1 at 5–10]. Next, Plaintiff claims that the ALJ improperly failed to assign weight to the records of her treating physician, Raj Baljepally, M.D., or state the weight assigned to Plaintiff's testimony. [*Id.* at 10–13]. Lastly, Plaintiff contends that the ALJ did not properly consider the combination of her impairments in the RFC determination. [*Id.* at 13–15]. The Court will address Plaintiff's specific allegations of error in turn.[2]

### A.    Step Three Determination

Plaintiff asserts that the ALJ improperly found that her cardiovascular impairments did not meet the requirements for Listings 4.02, 4.04, 4.05, and 4.06. [Doc. 13-1 at 6–10]. The Commissioner maintains that no doctor opined that Plaintiff's heart condition met or equaled the

---

[2] The Court notes that other than citing to the applicable Listings, Plaintiff's counsel failed to provide any citations to supporting case law or the applicable regulations throughout the brief, or detail how such supporting authority would apply to the specific facts of Plaintiff's case. Ultimately, the Court could have found that many of Plaintiff's arguments were "perfunctory," and thus waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *see also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (in a Social Security appeal, noting that a claimant's observations with respect to the ALJ's findings "without elaboration or legal argument, failing even to hint at their legal significance or virtue," are generally waived).

"The Court urges [Plaintiff's] counsel, however, in future briefing to more fully develop the arguments with analysis, reasoning, and discussion of regulations and case law, tying such discussion to the facts of the case, so that those arguments will not be susceptible to a finding that they are perfunctory." *See, e.g.*, *Coleman v. Astrue*, No. 11-CV-236-PJC, 2012 WL 1952668, at *7 (N.D. Okla. May 30, 2012).

severity of any Listing, and Plaintiff did not establish that her condition met every requirement of the requisite Listings.  [Doc. 17 at 11–17].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529.  Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity.  20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).  However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding.  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding."  *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted).  Yet, it is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.

1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability").

In the disability decision, the ALJ found that the severity of Plaintiff's physical impairments did not meet or medically equal the criteria of any listed impairments. [Tr. 14]. Specifically, the ALJ noted that he considered Listing 4.04 related to Plaintiff's aortic valve problems. [*Id.*]. The Sixth Circuit has held that a conclusory finding at step three may be upheld when the ALJ made sufficient factual findings elsewhere in the decision, or even if the ALJ's factual findings failed to support his step three findings, such error was harmless if the plaintiff had not shown that their impairments met or medically equaled in severity any of the listings. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014).

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). "The ALJ should discuss the relevant listing, however, where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson*, 579 F. App'x at 432 (quoting *Abbot v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). However, Plaintiff bears the burden to prove that she has an impairment that meets or medically equals a Listing. *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). Ultimately, "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

8

Here, the Court agrees that Plaintiff failed to cite to specific evidence in the record establishing that her cardiovascular impairments met or equaled every requirement of the Listings. Rather, Plaintiff broadly cited to her testimony and several treatment notes in the medical record regarding her heart condition, but failed to claim how these citations applied to the specific Listings. Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listings 4.02, 4.04, 4.05, and 4.06 by pointing to specific medical findings that satisfy all of the criteria of the listing. *See Biddle v. Berryhill*, No. 3:17-CV-198, 2019 WL 572873, at *9 (E.D. Tenn. Feb. 12, 2019) ("Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listing 1.04(A) by pointing to specific medical findings that satisfy all of the criteria of the listing."); *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination. Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."). However, the Court will also address Plaintiff's claims related to the specific Listings.

### 1. Listing 4.02

Plaintiff asserts that the ALJ failed to properly evaluate whether she met Listing 4.02. Listing 4.02 addresses chronic heart failure while undergoing prescribed treatment, with specific requirements under both section A and section B. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02. Under section A, Plaintiff must show the medically documented presence of one of the following: (1) systolic function with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of thirty percent or less during a period of stability (not during an episode of acute heart failure); or (2) diastolic failure with left ventricular posterior wall plus septal thickness

totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). *Id.*

Plaintiff must also show one of the following: (1) persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom a doctor has concluded that the performance of an exercise test would present a significant risk to the individual; or (2) three or more separate episodes of acute congestive heart failure within a consecutive twelve-month period with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for twelve hours or more, separated by periods of stabilizations; or (3) an inability to perform on an exercise tolerance test at a workload equivalent to five METs or less. *Id.* at § 4.02B.

In her general citation to the medical record, Plaintiff claims that "[m]itral valve prolapse and valve dysfunction causes a certain level of systolic failure." [Doc. 13-1 at 8]. Plaintiff asserts that on September 23, 2014, her right ventricular systolic pressure was at 64.3 mmHG [Tr. 759], and Listing 4.00 C.8(vii) defines severe pulmonary hypertension as greater than 60 mmHG. [Doc. 13-1 at 7].

First, Plaintiff claims that her right ventricular systolic pressure constituted severe pulmonary hypertension under Listing 4.00. However, Listing 4.00 contains definitions and sets forth general provisions for evaluating cardiovascular impairments at step three. *See Clark v. Colvin*, No. CIV.A. 14-106-DLB, 2015 WL 1947338, at *4 (E.D. Ky. Apr. 29, 2015) ("[Listing 4.00] is an introductory section that sets forth the general rules for evaluating all cardiovascular impairments detailed in Listings 4.02 through 4.12. Stated another way, Plaintiff cannot establish

the existence of a cardiovascular impairment by simply stating that she has chronic heart failure and discomfort or pain due to myocardial ischemia. Instead, she must satisfy several specific criteria set forth in Listing 4.02 to demonstrate chronic heart failure.").

Plaintiff does not cite to any ejection fraction measurements or findings regarding her left ventricular end diastolic dimensions. Similarly, Plaintiff does not cite to any treatment notes or testing regarding the criteria for diastolic failure. Plaintiff has failed to set forth evidence that a medical consultant concluded that the performance of an exercise test would present a significant risk to her, she suffered three or more episodes of acute congestive heart failure within a twelve-month period, or that she is unable to perform an exercise tolerance test at five metabolic equivalent tasks ("METs") or less. 20 C.F.R Part 404, Subpart P, Appendix 1, § 4.02(B)(1)-(3).

Plaintiff cites to March 30, 2015 and March 29, 2016 treatment notes with Dr. Baljepally to claim that she had edema, palpitations, chest pain, and syspnea, as well as severe pulmonary hypertension, with symptoms of dizziness, dyspnea, chest pain, palpitations, and edema. [Doc. 13-1 at 7]; *see* [Tr. 712–13, 745–46]. However, the ALJ detailed that Plaintiff "was overall doing well" after her aortic valve replacement during a January 12, 2015 follow-up examination. [Tr. 17]; *see* [Tr. 642]. Further, the ALJ noted that Dr. Baljepally stated on March 30, 2015 that Plaintiff had no complaints of chest pain or dyspnea. [Tr. 17]; *see* [Tr. 718]. Lastly, the ALJ reviewed that although Plaintiff complained of atypical chest pain, palpitations, and intermittent dyspnea, Dr. Baljepally reported that after a physical exam on March 29, 2016, Plaintiff exhibited a regular heart rate and rhythm, had no edema and was neurologically intact, her EKG was normal, and Dr. Baljepally doubted that the chest pain and dyspnea were secondary to cardiac etiology. [Tr. 17]; *see* [Tr. 747–48].

Although Plaintiff largely recites her testimony regarding her cardiovascular impairments,

11

as well as the treatment records of Dr. Baljepally, Plaintiff fails to specifically assert how the medical record establishes that she met the requirements for systolic failure or diastolic failure under Listing § 4.02. Without Plaintiff demonstrating how the cited medical evidence supports a finding that she met the Listing requirements, the Court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Drake v. Comm'r of Soc. Sec.*, No. 1:13-CV-230, 2014 WL 4983839, at *8 (W.D. Mich. Sept. 24, 2014) ("Plaintiff has failed to meet her burden demonstrating that her condition met or equaled a listed impairment. While plaintiff's brief included a summary of her medical record, she did not address the requirements of . . . Listing 11.08 (spinal cord and nerve root lesions due to any cause) . . . nor did she demonstrate which specific medical findings satisfied any particular listing.").

### 2. Listing 4.04

Plaintiff again broadly cites to the medical record regarding her cardiovascular impairments to claim that she met Listing 4.04. Listing 4.04 is met if there is evidence of "ischemic heart disease, with symptoms due to myocardial ischemia . . . while on a regiment of prescribed treatment" plus one of the following: (A) an exercise tolerance test demonstrating a specified manifestation; (B) three separate ischemic episodes, each requiring revascularization, within a 12-month period; or (C) coronary artery disease evidenced by medical imaging and where the patient is unable to perform an exercise tolerance test. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.04. In the disability decision, the ALJ indicated that he considered Listing 4.04 related to Plaintiff's aortic valve problems, but did not provide specific reasoning. [Tr. 14].

Here, Plaintiff has failed to point to any evidence which suggests that she meets one of the criteria of Listing 4.04. Plaintiff did not undergo a stress test which demonstrated one of the enumerated manifestations, suffer three ischemic episodes requiring revascularization, and there

is no evidence in the record that Plaintiff was unable to perform an exercise tolerance test. *See Stafford v. Comm'r of Soc. Sec.*, No. 0:16-CV-00095-KKC, 2017 WL 4287198, at *3 (E.D. Ky. Sept. 27, 2017) ("Stafford recounts much of the medical history related to his cardiac problems . . . But, even assuming that the record evidence establishes this claim, Stafford has not raised a substantial question as to Listing 4.04 because he has not shown he met one of the three additional criteria listed in § 4.04(A)-(C)."). While Plaintiff testified that she had never been given a stress test, and claims this is because of her symptomatic severe aortic stenosis and severe pulmonary hypertension [Doc. 13-1 at 8], she fails to point to any medical opinion or treatment note establishing that she was unable to perform exercise tolerance testing. Later in the disability decision, the ALJ found that Plaintiff "described daily activities, which are not consistent with the alleged disabling symptoms and limitations." [Tr. 19]. Therefore, the ALJ's finding that Plaintiff did not meet Listing 4.04 is supported by substantial evidence.

### 3. Listing 4.05

Plaintiff broadly claims that her heart conditions met Listing 4.05. At the time of the ALJ's decision, Listing 4.05 required:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.05. "Syncope" is defined as "a loss of consciousness or a faint," while "near syncope" is defined as "a period of altered consciousness . . . not merely a feeling of light-headedness, momentary weakness, or dizziness." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00F(3)(b); *see, e.g., Robertson v. Comm'r of Soc. Sec.*, 513 F.

App'x 439, 440 (6th Cir. 2003). Additionally, Plaintiff later asserts that she has had one episode of syncope since her aortic valve replacement, and testified that she is concerned about fainting. [Doc. 13-1 at 11].

Ultimately, Plaintiff fails to establish "a documented association between the syncope or near syncope and the recurrent arrhythmia" required under Listing 4.05. *See Conner v. Berryhill*, No. 1:17-CV-271, 2019 WL 1331736, at *4 (E.D. Tenn. Mar. 25, 2019). First, Plaintiff fails to point to any treatment record documenting recurrent arrhythmias. Further, the Commissioner points to Plaintiff's normal EKG during her examination with Dr. Baljepally on March 29, 2016. [Tr. 747]. Although Plaintiff states that she had one episode of syncope, she does not point to any instances of recurrent arrhythmias in the medical record. *See Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) ("Robertson has identified no evidence in the record demonstrating that, during his alleged period of disability, he had a recurrent arrhythmia that was not fully controlled. Further, there is no evidence establishing an association between Robertson's alleged episodes of syncope or near syncope and a recurrent arrhythmia."). Accordingly, Plaintiff has failed to establish that she met the specific criteria under Listing 4.05.

### 4. Listing 4.06

Lastly, Plaintiff claims that the ALJ erred in failing to find that she met the criteria for Listing 4.06, addressing symptomatic congenital heart disease. At the time of the ALJ's decision, Listing 4.06 required:

4.06 Symptomatic congenital heart disease (cyanotic or acyanotic), documented by appropriate medically acceptable imaging (see 4.00A3d) or cardiac catheterization, with one of the following:

A. Cyanosis at rest, and:

1. Hematocrit of 55 percent or greater; or

14

2. Arterial $O_2$ saturation of less than 90 percent in room air, or resting arterial $PO_2$ of 60 Torr or less.

OR

B. Intermittent right-to-left shunting resulting in cyanosis on exertion (e.g., Eisenmenger's physiology) and with arterial $PO_2$ of 60 Torr or less at a workload equivalent to 5 METs or less.

OR

C. Secondary pulmonary vascular obstructive disease with pulmonary arterial systolic pressure elevated to at least 70 percent of the systemic arterial systolic pressure.

20 C.F.R. Part 404, Subpart P, App. 1 § 4.06.

Here, Plaintiff fails to cite to any evidence in the medical record regarding cyanosis at rest or her oxygen saturation levels. As the Court has already detailed, throughout her brief, Plaintiff generally cites to the medical record and the related symptoms of severe pulmonary hypertensions. While Plaintiff cites to her right ventricular systolic pressure measurements, Plaintiff again fails to present specific evidence that she claims establishes that she met the criteria under Listing 4.06. *See Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in his step three analysis, and her allegations of error do not constitute a basis for remand.

**B.      Treatment Records from Dr. Baljepally**

Plaintiff maintains that the ALJ improperly failed to assign a weight to the medical records

provided from her treating physician, Dr. Baljepally, regarding her heart condition. [Doc. 13-1 at 10].

However, Plaintiff does not assert that the treatment records submitted from Dr. Baljepally constituted a medical opinion. Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). 20 C.F.R. § 404.1527(a)(2) defines a medical opinion as one "that reflects[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

Therefore, the ALJ was not required to accord Dr. Baljepally's treatment records any weight, because they did not provide an "opinion" within the meaning of the regulations. 20 C.F.R. § 404.1527(a)(2); *see, e.g.*, *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (finding a doctor's "report cannot constitute a medical opinion, because it consists primarily of a restatement, often verbatim, of the underlying evidence contained in [claimant's] medical records—evidence that the administrative law judge fully considered and set out in his decision."). "The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'" *Calloway v. Comm'r of Soc. Sec.*, 2016 WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016), *report and recommendation adopted by*, 2016 WL 1161529 (E.D. Mich. Mar. 23, 2016) (citing 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and

"without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)")).

Further, the ALJ reviewed Dr. Baljepally's treatment records with respect to Plaintiff's cardiac impairments in the disability decision. The Court has already detailed the ALJ's discussion of Dr. Baljepally's examinations of Plaintiff after her aortic valve replacement, including March 30, 2015 and March 29, 2016 treatment notes. [Tr. 17]; *see* [Tr. 714–22, 744–60]. Therefore, the Court finds that the ALJ fully considered the treatment records from Plaintiff's treating physician, Dr. Baljepally, and Plaintiff's assignment of error does not constitute a basis for remand.

### C.    Plaintiff's Testimony

Plaintiff alleges that the ALJ improperly failed to assign a weight to her testimony, and did not consider her testimony about her pain and symptoms related to her heart and cardiovascular impairments. [Doc. 13-1 at 11].[3] The Commissioner asserts that the ALJ "properly evaluated Plaintiff's alleged symptoms in a manner that was consistent with [the] SSA's regulations and policies." [Doc. 17 at 17].

In the disability decision, the ALJ first extensively reviewed Plaintiff's testimony, including noting that Plaintiff claimed that she was unable to work due to granulomas in the upper lobes of her lungs, lymph nodes in her neck, chronic migraines, bulging disk, degenerative disc disease, heart defects, including blockage and disease, and post-traumatic stress disorder. [Tr. 17].

---

[3] Ultimately, Plaintiff broadly reviews her testimony at the disability hearing, but in several instances, fails to assert any allegation of error by the ALJ other than that "[t]he ALJ did not properly consider [her] testimony about her pain (pain medication) or symptoms related to her defective heart (i.e., syncope, palpitations)." [*Id.*]. Therefore, the Court will generally detail Plaintiff's arguments about the failure to assign any weight to her testimony, but will only address citations to her testimony when accompanied by a specific allegation of error.

The ALJ stated that Plaintiff testified that she was unable to work after her heart valve surgery, and developed symptoms of fainting, shortness of breath, and chest pain. [*Id.*]. Further, the ALJ detailed Plaintiff's testimony regarding her PTSD, thyroid issues, anxiety, and attempted mental health treatment. [*Id.*]. Ultimately, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above, alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.*].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's

symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

First, the Court notes that an ALJ is not required to assign a specific weight to the claimant's testimony, but must determine the intensity, persistence, and limiting effects of an individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *2–3; *see, e.g.*, *Strode v. Colvin*, No. 3:12-0378, 2016 WL 3580832, at *8 (M.D. Tenn. June 28, 2016) ("Plaintiff's additional argument that the ALJ violated SSR 97-6p by not explicitly stating the amount of weight given to Plaintiff's testimony similarly fails because the ALJ is not required to assign a specific value to such testimony."). Here, the ALJ properly explained how Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence related to Plaintiff's "alleged aortic valve defect" [Tr. 17], medical records detailing clear lungs with normal respiratory effort [Tr. 18], Plaintiff's range of motion during two consultative

examinations [*Id.*], Plaintiff's described daily activities [Tr. 19], and work history [*Id.*]. Plaintiff fails to cite to any supporting case law supporting her claim that the ALJ failed to specifically assess her "credibility." [Doc. 13-1 at 13].

Plaintiff alleges that the ALJ improperly asked the VE to assume that she could work with exposure to unconcentrated chemical fumes, despite her testimony that cleaning chemicals take away her breath. [*Id.* at 12].[4] However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Additionally, Plaintiff challenges the ALJ's statement that her "problems were not severe because she did not require significant medical treatment for one year," as she testified that her insurance only allowed her one doctor's visit per year. [Doc. 13-1 at 13]. Although Plaintiff did not cite to any specific section of the ALJ's decision, when discussing Plaintiff's severe impairments, the ALJ found that "[o]ther impairments alleged in the record are considered non-severe, because they did not exist for a continuous period of twelve months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations." [Tr. 14].

The Commissioner points to Plaintiff's testimony at the disability hearing that her insurance company would allow additional doctors visits if a significant change in her condition or test results was noted. [Doc. 17 at 19]; *see* [Tr. 74]. In the disability decision, the ALJ noted

---

[4] The Court notes that the question posed to the VE limited concentrated exposure to environmental irritants and chemical fumes. [Tr. 96].

that Plaintiff had no complaints of chest pain or dyspnea after her aortic valve replacement, and that "she was overall doing well with some mild incisional discomfort." [Tr. 17]. Further, Plaintiff does not specifically detail which medical impairments she claims were improperly found to not be severe.

Ultimately, the Court finds that the ALJ's finding that the objective record evidence did not support Plaintiff's claims of disabling limitations is supported by substantial evidence. The ALJ was not required to adopt Plaintiff's testimony in full, and the ALJ appropriately detailed his reasoning for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.

### D.      ALJ's Consideration of the Medical Record

Plaintiff maintains that the ALJ did not consider the combined effect of her severe impairments. [Doc. 13-1 at 13–14]. In support of this claim, Plaintiff generally cites to her testimony and "incorporates the above referenced arguments herein." [*Id.* at 14]. Specifically, in an argument the Court has not yet addressed, Plaintiff maintains that the ALJ failed to address her cardiac impairments, including "mitral valve prolapse and regurgitation, tricuspid valve regurgitation, [and] pulmonary vein flow reversal." [*Id.* at 6].

Ultimately, the Court finds that the ALJ appropriately considered the combined effects of Plaintiff's impairments. When assessing whether a claimant is disabled, the ALJ must consider the "combined effect" of all of the claimant's impairments. 20 C.F.R. § 404.1523. This consideration must be more than "lip service" that does little more than acknowledge the presence of multiple impairments. *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 775–76 (6th Cir. 2008) (citing *Mowery v. Heckler*, 771 F.2d 966, 970 (6th Cir. 1985)). However, the ALJ

may meet this requirement by analyzing each condition individually.  *See Bledsoe v. Barnhart*, 165 F. App'x 408, 410–11 (6th Cir. 2006) ("The ALJ described evidence pertaining to all impairments, both severe and non-severe . . . . The ALJ explicitly stated that he considered the combination of all impairments . . . ."); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (finding "[a]n ALJ's individual discussion of multiple impairments does not imply that [s]he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet" a listed impairment) (citing *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990)).

First, the Court has already found that the ALJ properly reviewed Plaintiff's testimony and the applicable Listings.  Further, the ALJ's decision demonstrates that he appropriately considered the combined effects of Plaintiff's impairments by reviewing her objective physical impairments, her subjective assessment of pain, her daily activities, and mental impairments.  The ALJ extensively reviewed the medical record with respect to Plaintiff's aortic valve defect, as well as her recovery after undergoing an aortic valve replacement via partial sternotomy.  [Tr. 17].  Additionally, the ALJ specifically noted that he considered "[t]he severity of [Plaintiff's] physical impairments . . . singly and in combination," to find that that they did not equal any applicable Listings.  [Tr. 14].  In the RFC determination, the ALJ explicitly stated that he considered "the limitations and restrictions imposed by the combined effects of all [of Plaintiff's] medically determinable impairments."  [Tr. 16].

Accordingly, the ALJ's decision demonstrates that Plaintiff's mental and physical impairments were considered collectively, and the RFC determination is supported by substantial

evidence.  *See, e.g.*, *Simons v. Barnhart*, 114 F. App'x 727, 734 (6th Cir. 2004) ("Here, the ALJ specifically stated that he was obligated to consider all symptoms, including pain. He also found that Simons had an impairment, or combination of impairments, which was severe. Just because the ALJ did not separately discuss Simons's multiple impairments does not mean the he did not consider their combined effect.").

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.


_____
United States Magistrate Judge